# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Raul Kopaleishvili (the "Named Plaintiff" or "Class Representative"), individually and on behalf of the Class (collectively, "Plaintiffs"), and Defendants Uzbek Logistics, Inc. and Uzbek Transport Express, LLC ("Defendants") (Plaintiffs and Defendants are referred to collectively as "Parties").

## RECITALS AND BACKGROUND

**WHEREAS**, on or about April 20, 2017, the Named Plaintiff filed in the United States District Court for the Eastern District of New York a proposed Class Action Complaint on behalf of himself and other allegedly similarly situated in a case captioned *Raul Kopaleishvili, et. al v. Uzbekt Logistics, Inc., et. al.*, Docket No. 17-cv-2375. The action was subsequently transferred to the Southern District of Ohio and given the Docket No. 17-cv-702 (the "Litigation")

**WHEREAS**, in the Litigation, Named Plaintiff alleged a single breach of contract claim against Defendants. Specifically, Named Plaintiff alleged that Plaintiffs are truck drivers that entered into contracts with Defendants whereby Defendants promised to pay them on a "per mile" basis. Plaintiffs allege that Defendants breached their contracts by failing to pay Plaintiffs for actual miles driven from origin to destination;

**WHEREAS**, pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court granted Class Certification, and defined the class to include "All drivers who entered into written contracts with Uzbek Logistics, Inc. and/or Uzbek Transport Express, LLC since April 2009 requiring payment on a 'per mile' basis. The class does not include those drivers whose contracts expressly state compensation will be paid 'based on practical miles.'"

**WHEREAS**, Defendants deny all of the allegations made by Plaintiffs in the Litigation, and deny any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all claims that were asserted or could have been asserted by the Named Plaintiff and the Class (as defined below) against Defendants;

**WHEREAS,** the Named Plaintiff and Defendants engaged in extensive settlement negotiations, including a settlement conference with District Judge Timothy S. Black, resulting in this Agreement;

**WHEREAS**, without further acknowledging or conceding any liability or damages whatsoever, Defendants agree to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

**WHEREAS**, Class Counsel has analyzed and evaluated the merits of the claims alleged in the Litigation and the impact of this Agreement on the Named Plaintiff and the Class Members. Based upon Class Counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, may not result in any recovery whatsoever, or may result in a recovery that is less favorable

and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiff and the Class Members.

**NOW THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## AGREEMENT

**1.   DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**   **Agreement**. "Agreement" means this Settlement Agreement.

**1.2**   **Application for Final Approval.** "Application for Final Approval" means documents and materials to be filed with the Court pursuant to Section 2.6, seeking final approval of the settlement.

**1.3**   **Bar Date**. "Bar Date" means the date as set by the Court by which any Class Member who wishes to opt-out or object pursuant to Sections 2.4 and 2.5 must take certain actions as described herein to opt-out or object.

**1.4**   **Class Counsel**. "Class Counsel" shall mean LaDonna Lusher and Jack Newhouse of Virginia & Ambinder, LLP, 40 Broad Street, 7th Floor, New York, New York 10004 and Robert Croskery of Croskery Law Offices, 810 Sycamore St., 2nd Floor, Cincinnati, Ohio 45202.

**1.5**   **Class List.** "Class List" means the list produced on May 12, 2020, identifying the names and last known addresses of all forty-nine (49) Class Members.

**1.6**   **"Class" and "Class Members."** "Class" and "Class Members" refers to all drivers who entered into written contracts with Uzbek Logistics, Inc. and/or Uzbek Transport Express, LLC since April 2009 requiring payment on a "per mile" basis. The class does not include those drivers whose contracts expressly state compensation will be paid based on "practical miles."

**1.7**   **Class Released Claims**. "Class Released Claims" means the claims against Defendants that Class Members fully and finally release as a result of this Settlement as described in Section 4.1.

**1.8**   **Costs and Attorneys' Fees**. "Costs and Fees" means Class Counsel's Court approved attorneys' fees, expenses and/or costs.

**1.9**   **Court.** "Court" means the United States District Court for the Southern District of Ohio.

1.10 **Days**. "Days" means calendar days unless specified otherwise.

1.11 **Defendants**. "Defendants" means Uzbek Logistics, Inc. and Uzbek Transport Express, LLC.

1.12 **Defendants' Counsel**. "Defendants' Counsel" means Angela S. Cash, Scopelitis, Garvin, Light, Hanson, & Feary, P.C., 10 West Market Street, Suite 1400, Indianapolis, IN 46204 and Brandon McGrath, Dentons Bingham Greenebaum LLP, 312 Walnut Street, Suite 2450, Cincinnati, OH 45202.

1.13 **Fairness Hearing**. "Fairness Hearing" means the hearing before the Court relating to the Application for Final Approval.

1.14 **Final Approval**. "Final Approval" means the Court's entry of a Final Approval Order and Judgment in a form agreed to by the Parties granting final approval to this Agreement and dismissing this Litigation with prejudice.

1.15 **Final Effective Date.** The "Final Effective Date" means the date on which all of the following have occurred: (1) the Court has entered judgment in a form agreed upon by the parties and ruled on the motion for Costs and Attorneys' Fees and (2) the judgment and rulings have become final. As used in this paragraph, "final" means the later of (a) the expiration of all governing time periods for seeking rehearing, reconsideration, appellate review, and/or an extension of time for seeking appellate review without any such actions being taken, or (b) if rehearing, reconsideration, appellate review, and/or extension of time for seeking appellate review is sought, thirty (30) days after any and all avenues of rehearing, reconsideration, appellate review and/or extension of time have been exhausted, no such further action is permitted, the time for seeking such further action has expired, and the judgment has not been modified, amended or reversed in any way.

1.16 **Gross Settlement Amount.** "Gross Settlement Amount" refers to the total sum of One Hundred Thousand Dollars ($100,000.00) and is intended to cover all Individual Settlement Allocations to Class Members on the Class List, Costs and Attorneys' Fees, the Service Award, and any other obligation of Defendants to the Class or Class Counsel as a result of this Settlement.

1.17 **Individual Settlement Allocation.** "Individual Settlement Allocation" refers to each Class Member's share of the Net Settlement Amount. For purposes of Unknown Class Members, Individual Settlement Allocation refers to the individual settlement amount as calculated pursuant to Section 3.5(D).

1.18 **Named Plaintiff**. "Named Plaintiff" or "Class Representative" refers to Raul Kopaleishvili.

1.19 **Net Settlement Amount**. "Net Settlement Amount" refers to the amount remaining from the Gross Settlement Amount after deducting Costs and Attorneys' Fees and the Service Award.

1.20 **Notice or Notices.** "Notice" or "Notices" means the Court approved Notice of Proposed Settlement of Class Action Lawsuit as authorized in the Preliminary Approval Order.

1.21 **Objector.** "Objector" means an individual who properly files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.22 **Opt-out Statement.** "Opt-out Statement" is a timely written, signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

1.23 **Preliminary Approval.** "Preliminary Approval" means the Court's entry of an Order: (i) preliminarily approving the terms and conditions of this Agreement, (ii) directing the manner and timing of providing Notice to the Class Members, and (iii) setting dates to effectuate the terms of this Agreement, including the Bar Date and the date of any Fairness Hearing.

1.24 **Qualified Class Member.** "Qualified Class Member" means a Class Member who does not opt-out and therefore becomes eligible for an Individual Settlement Allocation as described in Section 3.5.

1.25 **Service Award.** "Service Award" means any monetary payment in addition to his Individual Settlement Allocation provided to Named Plaintiff for his efforts on behalf of the Class in this Litigation.

1.26 **Settlement Checks.** "Settlement Checks" means checks issued to Class Members in the amount of each Class Member's Individual Settlement Allocation.

## 2. INITIAL PROCEDURAL ISSUES

2.1 **Binding Agreement.** Subject to Court approval, this Agreement is a binding agreement and contains all material and agreed-upon terms.

2.2 **Notice to Class Members.** The Court approved Notice will inform Class Members about this Agreement and will also advise them of the opportunity to object or opt-out, and/or to appear at the Fairness Hearing.

    (A) Class Counsel shall be responsible for issuing Notice to the Class Members on the Class List. Within thirty (30) days of the Preliminary Approval Order or as otherwise ordered by the Court, Class Counsel will mail to all Class Members, via United States First Class Mail, the Court approved Notice of Proposed Settlement of Class Action Lawsuit. Class Counsel will take all reasonable steps to obtain the correct address of every Class Member, including a skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. Class Counsel shall also mail a Notice to any Class Member who contacts Class Counsel during the time period between the initial mailing of the Notice and the Bar Date and requests that their Notice be re-mailed. It will be conclusively presumed that, if an envelope containing the Notice has not been returned within 28 days of the mailing, the Class Member received the Notice.

(B) Where a Class Member's Notice is returned as undeliverable, Defendants shall reasonably assist in locating Class Members, including, but not limited to, providing additional contact information available, such as, phone number, e-mail address, and any other contact information that can be helpful.

**2.3 Preliminary Approval Motion.**

(A) Within thirty (30) days of the signing of this Agreement, Plaintiff shall file a Motion for Preliminary Approval which shall include (1) the proposed Notice (2) the proposed Preliminary Approval Order, and (3) an executed version of this Agreement. The proposed Notice and proposed Preliminary Approval Order shall be approved by the Parties and will be made part of Class Counsel's Affirmation in this proposed settlement. Class Counsel shall draft the Motion for Preliminary Approval, and Defendants shall be provided a draft of the Motion for Preliminary Approval and attachments at least seven (7) days prior to the filing of the Motion for Preliminary Approval for review. In the Motion for Preliminary Approval, Plaintiff shall also seek the implementation of dates for effectuating the terms of this Agreement, including (1) the setting of the Bar Date for individuals to submit Opt-out Statements or objections to this Agreement, which date will be sixty (60) days from the initial mailing of Notice to the Class Members by Class Counsel, and (2) to the extent required by the Court, a Fairness Hearing for Final Approval of this Agreement before the Court at the earliest practicable date.

(B) In the Motion for Preliminary Approval, Plaintiff shall inform the Court of the intended process to obtain a "Final Order" in accordance with the Court-approved schedule, so that at the Fairness Hearing, if the Court deems one necessary, the Court may among other things: (1) approve this Agreement as fair, adequate and reasonable; (2) dismiss the Action with prejudice; (3) award Costs and Attorneys' Fees and payment of Service Award; (4) authorize distribution and payment to the Class Members, (5) enter the Final Approval Order and Judgment, and (6) effectuate any other relief necessary to effectuate this Agreement.

**2.4 Class Member Opt-outs.**

(A) Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail, e-mail or fax a written, signed statement to Class Counsel that states he or she is opting out of the settlement, and include his or her name, address, and telephone number and statement indicating his or her intention to opt-out such as: "I opt out of the Uzbek settlement." ("Opt-out Statement").

(B) To opt-out of the settlement, a Class Member must post-mark, email or fax an Opt-out Statement on or before the Bar Date ("Opt-out Period").

(C) Class Counsel shall serve copies of each Opt-out Statement on Defendants' Counsel not later than five (5) days after receipt.

(D) Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this

        Agreement, will be bound by the Final Approval Order in this case, and will be bound by the release set forth in Section 4.1.

    (E)    A Class Member that files an Opt-out Statement shall not be permitted to file an objection.

**2.5    Objections to Settlement.**

    (A)    Other than Class Members who have opted out, Class Members who wish to present objections to the proposed settlement must first do so in writing unless otherwise permitted by the Court. To be considered, such statement must be submitted to Class Counsel via e-mail, fax, or United States First Class Mail post-marked by the Bar Date and received by Class Counsel by fifteen (15) days after the Bar Date. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone number of the Class Member making the objection. Class Counsel shall send copies of each objection and supporting documents to Defendants' Counsel by email delivery no later than five (5) days after receipt of the objection, with address information redacted.

    (B)    An Objector who wishes to appear at the Fairness Hearing, either in person or through counsel hired by the Objector, must state his or her intention to do so in writing to Class Counsel at the time he or she submits his or her written objections to Class Counsel. An Objector may withdraw his or her objections at any time. An Objector who has filed a timely objection in written form does not need to attend or speak at the Fairness Hearing in order for the Court to consider their objection.

    (C)    The Parties may file with the Court written responses to any filed objections no later than seven (7) calendar days before the Fairness Hearing, or at such other time as directed by the Court.

**2.6    Fairness Hearing and Application for Final Approval and Dismissal.**

    (A)    After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order and, to the extent scheduled by the Court, in advance of the Fairness Hearing, Plaintiffs shall file supporting documents and materials for Final Approval of the settlement ("Application for Final Approval"). The Application for Final Approval may contain supporting exhibits from Class Counsel regarding the fairness, adequacy and reasonableness of the settlement or any aspect related to this Agreement, including Class Counsel's application for approval of Costs and Attorneys' Fees. The Application for Final Approval will also include a proposed Final Approval Order in a form agreed to by the Parties.

    (B)    At the Fairness Hearing and/or through the Application for Final Approval, Plaintiffs will request an order: (1) approving the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely submitted an Opt-out Statement; (2) ordering Class Counsel to distribute Settlement Checks to the Qualified Class Members, including the Service Award as described

    in this Agreement; (3) dismissing the case with prejudice (4) approving the releases as fair and reasonable; and (5) retaining jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

(C)  Plaintiff's Motion for Final Approval will be considered separate and apart from the Court's consideration of any applications for Costs and Attorneys' Fees, and the Court's ruling on any such separate applications will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

## 3. SETTLEMENT TERMS

### 3.1 Settlement Amount.

(A)  The Gross Settlement Amount shall be a total of One Hundred Thousand ($100,000.00), which shall cover, resolve and fully satisfy: (1) all Individual Settlement Allocations to Class Members on the Class List pursuant to this Agreement; (2) all Costs and Attorneys' Fees approved by the Court; (3) any court-approved Service Award; (4) the Class Released Claims; (5) a general release of all claims by Plaintiff; and (6) any other obligation of Defendants pursuant to this Settlement Agreement except as set forth in Section 3.1(B).

(B)  The Gross Settlement Amount does not include payments to any Class Member that are not on the Class List ("Unknown Class Members"). Procedures for processing claims by Unknown Class Members shall be governed by Section 3.5(D).

### 3.2 Plan of Distribution.

(A)  Within fifteen (15) days after the Final Approval Order, Class Counsel shall provide Defendants' Counsel a computation itemizing the payments from the Gross Settlement Amount, including, the Individual Settlement Allocations to each Qualified Class Member, Costs and Attorneys' Fees, and the Service Award.

(B)  Within seven (7) days after receipt of Class Counsel's proposed settlement computation, Defendants' Counsel will notify Class Counsel of any changes to the proposed settlement computation.

(C)  Within five (5) days after the Final Effective Date, but no earlier than February 28, 2022, Defendants will transfer to the escrow account designated by Class Counsel the Gross Settlement Amount.

(D)  Within thirty (30) days of receipt of the funds, Class Counsel will distribute the Gross Settlement Amount, consistent with the settlement computation set forth in Section 3.2(A) and Defendants' Counsel's changes.

(E)  Class Counsel shall use reasonable efforts to make a second mailing to Qualified Class Members whose Settlement Checks are returned because of incorrect

        addresses. Any additional efforts undertaken shall be at the sole discretion and cost of Class Counsel.

(F) Any Settlement Check not deposited, cashed or otherwise negotiated by the Qualified Class Member within one hundred eighty (180) days of date of the initial mailing of Settlement Checks ("Check Cashing Period") will be null and void and the funds will revert back to Defendants. Any costs incurred by Class Counsel in canceling checks or transmitting the remaining funds back to Defendants shall be deducted, to the extent possible, from the amount to be reverted prior to transmittal.

**3.3**    **Attorneys' Fees, Expenses and Costs.**

(A) At the same time as the Final Approval Motion is filed, Class Counsel will petition the Court for an award of Costs and Attorneys' Fees of Forty-Six Thousand Two-Hundred Fifty Dollars ($46,250.00) which includes reimbursement for their actual litigation expenses and costs to be paid from the Gross Settlement Amount. Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

(B) The substance of Class Counsel's application for Costs and Attorneys' Fees, expenses and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for Costs and Attorneys' Fees shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

(C) The Court-approved Costs and Attorneys' Fees to Class Counsel shall be paid from the Gross Settlement Amount at the time the payments to Class Members are made. The amount of attorneys' fees sought but not awarded shall become part of the Net Settlement Amount to be distributed to Qualified Class Members.

**3.4**    **Service Award to Named Plaintiff.**

(A) In addition to his Individual Settlement Allocation, Named Plaintiff Raul Kopaleishvili may apply to the Court to receive no more than Seven Thousand Five Hundred Dollars ($7,500.00) as a Service Award from the Gross Settlement Amount.

(B) The application for this Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for the Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval, Final Approval Order or the fairness or reasonableness of settlement. Defendants will not oppose Named Plaintiff's application for the Service Award. The amount of Service Award sought but not awarded shall become part of the Net Settlement Amount to be distributed to Class Members.

**3.5** **Allocations to Class Members.**

    (A)    A Class Member who does not opt out pursuant to Section 2.4 will be deemed eligible for a payment hereunder. Regardless of whether he or she signs, negotiates, deposits, endorses or cashes the Settlement Check, any Class Member on the Class List who does not opt out pursuant to Section 2.4 is subject to the release set forth in Section 4.1.

    (B)    Class Counsel shall calculate Individual Settlement Allocations for each Qualified Class Member, which shall be reviewed and approved by Defendants' Counsel as described in Section 3.2. All Individual Settlement Allocations to Qualified Class Members on the Class List shall be paid from the Gross Settlement Amount. The Net Settlement Amount shall be divided proportionally among Qualified Class Members on the Class List in accordance with Section 3.5(C).

    (C)    Each Qualified Class Member's proportionate share of the Net Settlement Amount shall be computed in the following manner:

        (1)    Each Qualified Class Member's proportionate share is based on his or her respective alleged "Mileage Underpayment," as defined in Section 3.5(C)(2). A Qualified Class Member's Mileage Underpayment shall be divided by the sum of all Qualified Class Member's Mileage Underpayments to determine each Qualified Class Member's percentage share of the Net Settlement Amount. Each Qualified Class Member's Individual Settlement Allocation will be determined by multiplying his or her percentage share of the Net Settlement Amount by the Net Settlement Amount.

        (2)    Each Class Member's Mileage Underpayment is equal to the approximated number of alleged unpaid miles driven by each Class Member multiplied by each Class Member's rate of pay per mile. Each Class Member's Mileage Underpayment was computed by Class Counsel based on documents and information produced by Defendants during this Litigation. Where documents and information were unavailable, averages based on available data were used to complete the computations.

    (D)    **Claims by Unknown Class Members**. In the event that any individuals whose names are not on the Class List shall come forward claiming to be Class Members, they shall be considered "Unknown Class Members" until such time as they are determined to be eligible for class membership under this Section 3.5(D) and entitled to payment under this Agreement.

        (1)    To be eligible for payment under this Agreement, an Unknown Class Member must provide written proof in the form of his or her written Independent Contractor Driver Agreement with either Defendant to Class Counsel and Defendants' Counsel no later than seven (7) days prior to the filing of the Motion for Final Approval of the Settlement. The Unknown Class Member's Independent Contractor Driver Agreement must establish the criteria for class membership, or no payment shall be due to that Unknown Class Member as a result of the settlement.

(2) For each Unknown Class Member who has established class membership, Defendants shall produce available documents and information reflecting mileage driven and compensation paid for the relevant statutory period. Class Counsel shall compute the Individual Settlement Allocation for each Unknown Class Member in the manner set forth in Section 3.5(C).

(3) Defendants shall be responsible for paying the Individual Settlement Allocations to all qualified Unknown Class Members in an amount not to exceed a total of Five Thousand Dollars ($5,000.00). Should these Individual Settlement Allocations exceed Five Thousand Dollars ($5,000.00), the Individual Settlement Allocations shall be reduced proportionally based on each Unknown Class Member's Mileage Underpayment. The Individual Settlement Allocations to Unknown Class Members shall not be paid from the Gross Settlement Amount or Net Settlement Amount, nor shall they reduce the Individual Settlement Allocations to be paid to Class Members on the Class List.

(4) Should the Individual Settlement Allocations to Unknown Class Members exceed Fifteen Thousand Dollars ($15,000.00), the Parties agree that a proportional reduction to Five Thousand Dollars ($5,000.00) may not be fair or reasonable to the Unknown Class Members under the circumstances presented, and the Parties will meet and confer in good faith to establish fair and reasonable Individual Settlement Allocations for Unknown Class Members. If the Parties are unable to resolve the dispute, the Court shall make a final binding decision on the issue.

(5) The Parties shall meet and confer in good faith over any disputes concerning the eligibility or payments to Unknown Class Members set forth in this Section. If the Parties are unable to resolve the dispute, the Court shall make a final binding decision on the issue.

**3.6    Tax Characterization.**

(A) Defendants shall report the Individual Settlement Allocations, pursuant to Section 3.5, to the respective payees and to the United States Internal Revenue Service and to other appropriate taxing authorities ("Taxing Authority" or "Taxing Authorities") on IRS Forms 1099, without deductions for taxes and withholdings, except as required by law.

(B) Defendants shall report to Named Plaintiff and to the Taxing Authorities on IRS Forms 1099 any service payments made pursuant to Section 3.4, without deductions for taxes and withholdings, except as required by law.

(C) Defendants shall report the Costs and Attorneys' Fees paid to Class Counsel, pursuant to Section 3.3, and to the Taxing Authorities on IRS Forms 1099, under Class Counsel's respective federal taxpayer identification numbers and apportioned as instructed by Class Counsel. No deductions for taxes and withholdings shall be made, except as required by law.

(D) Defendants shall remit to Class Counsel applicable tax forms for each Qualified Class Member, Plaintiff, and Class Counsel to be received by Class Counsel on or before February 1 of the year following the issuance of the Settlement Checks (expected February 1, 2023). Class Counsel shall promptly distribute the tax forms to Named Plaintiff and each Qualified Class Member.

**3.7**     **Defendants' Right to Void Settlement.** Defendants shall have the option to terminate the Settlement if 10% or more of the Class Members opt-out of the Settlement. If Defendants decide to void the Settlement, then the Settlement shall be considered null and void, and the Parties shall stand in the same position, without prejudice, as if this Settlement Agreement had been neither entered into nor filed with the Court.

**4.**     **RELEASE**

**4.1**     **Release of Claims by Class Members.** By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement, Named Plaintiff, each Class Member on the Class List, and each qualified Unknown Class Member presented with an Individual Settlement Allocation pursuant to Section 3.5(D) who does not timely opt out pursuant to Section 2.4 forever and fully releases Defendants and each of their owners, directors, and officers (collectively, the "Released Parties") from any and all past and present matters, claims, demands, causes of action, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that arise out of or relate to the facts, acts, transactions, occurrences, events, omissions or claims alleged in the Litigation ("Class Released Claims"). Unknown Class Members that are not presented with a payment under Section 3.5(D) shall not be subject to the Class Released Claims in this Agreement and shall not be barred in any way from pursuing claims under the principles of res judicata, collateral estoppel, release, waiver, claim preclusion, issue preclusion, or any other theory of claims or issue preclusion.

**4.2**     **General Release of Claims by Named Plaintiff.** In addition to the release granted by Named Plaintiff above and in exchange for receipt of a Service Award, Named Plaintiff, on behalf of himself and his heirs, executors, administrators, and representatives, shall and hereby does forever release, discharge and agree to hold harmless the Released Parties from any and all charges, complaints, claims, liabilities, damages, actions, or causes of action (including attorneys' fees, costs and expenses), known or unknown, at law or in equity, which he may now have or may have at any time prior to the date of Preliminary Approval against Defendants, including, but not limited to, claims alleged in the Litigation and any and all transactions, occurrences, or matters between the Parties occurring prior to the date of this Settlement Agreement.

**4.3**     **Denial of Liability.** By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiff, Class Members, or any other individual, individually or collectively, all such liability being expressly denied. Rather, Defendants enter into this agreement to avoid further protracted litigation and to resolve and settle all disputes. The Parties understand and agree that this Agreement and all exhibits hereto are settlement documents and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**5.**     **INTERPRETATION AND ENFORCEMENT**

5.1     **Cooperation Between the Parties; Further Acts**. The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2     **No Assignment**. Named Plaintiff represents and warrants that he has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.3     **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4     **Binding Effect**. This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5     **Arms' Length Transaction; Materiality of Terms**. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6     **Captions**. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7     **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Ohio, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.8     **Continuing Jurisdiction**. The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

5.9     **Waivers, etc. to Be in Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the

right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.10  **When Agreement Becomes Effective; Counterparts**. This Agreement shall become effective upon its full execution and approval by the Court. In the event that the Court does not approve this Agreement, the Agreement shall be void and shall not have any binding effect on the Parties. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.11  **Signatures**. This Agreement is valid and binding if signed by the Parties or their authorized representatives. The Parties acknowledge that Defendant, Uzbek Transport Express, LLC, is no longer in operation and agree that its former owner, Ulugbek Aripov, will be an authorized representative to sign on its behalf.

5.12  **Facsimile and Email Signatures**. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

5.13  **Construction**. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**[INTENTIONALLY LEFT BLANK]**

**WE AGREE TO THESE TERMS,**

**NAMED PLAINTIFF AND
CLASS REPRESENTATIVE**

By: _____
RAUL KOPALEISHVILI

Dated: __10.19.2021__

**DEFENDANT UZBEK LOGISTICS, INC.**

By: _____
Print Name: OTABEK ARIPOV

Title: PRESIDENT

Dated: 10-14-21

**DEFENDANT UZBEK TRANSPORT
EXPRESS LLC**

By: _____
Print Name: Ulugbek Aripov

Title: Owner

Dated: 10/14/21